# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

PRISM TECHNOLOGIES LLC,

        Plaintiff,

    v.

T-MOBILE USA, INC.,

        Defendant.

Civil Action No. 8:12-cv-124-LES-TDT

**Brief in Support of Motion for Summary Judgment of Patent Ineligibility**

**Jury Trial Requested In Omaha**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ......................................................................................... 1

II.     STATEMENT OF MATERIAL FACTS ....................................................... 2

        A.      Jurisdiction and Venue .................................................................... 2

        B.      The Asserted Patents and Claims .................................................... 3

III.    LEGAL STANDARDS ................................................................................. 3

        A.      Summary Judgement ....................................................................... 3

        B.      The Patent Act:  35 U.S.C. § 101 ................................................... 4

IV.     ARGUMENT ................................................................................................ 5

        A.      The Asserted Claims Fail To Satisfy The Subject Matter Eligibility
                Standard Under Section 101 And *Alice* ......................................... 5

                1.      *Mayo* Step 1:  The Asserted Claims Are Directed To An
                        Abstract Idea ......................................................................... 5

                2.      *Mayo* Step 2:  The Asserted Claims Do Not Contain An
                        Inventive Concept ............................................................... 10

                3.      Even As An Ordered Combination, The Claims Reveal No
                        Inventive Concept ............................................................... 14

        B.      The Dependent Claims Similarly Fail To Satisfy The Subject Matter
                Eligibility Standard ....................................................................... 15

V.      CONCLUSION ........................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014) ................................................................... 1, 4, 5, 8, 10, 11, 13, 14

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................................................ 3

*Bilski v. Kappos*,
    561 U.S. 593 (2010) ............................................................................................... 13

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ................................................................................................ 3

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014) ............................................................................... 5

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F. 3d 1245 (Fed. Cir. 2014) ......................................................................... 14, 15

*Gottschalk v. Benson*,
    409 U.S. 63 (1972) ................................................................................................. 1

*In re BRCA1- & BRCA2-Based Hereditary Cancer Test Patent Litig.*,
    774 F.3d 755 (Fed. Cir. 2014) ................................................................................. 5

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
    No. 2014-1506 (Fed. Cir. July 6, 2015) ............................................................... 8, 12

*Intellectual Ventures II LLC v. JP Morgan Chase & Co.*,
    No. 13-cv-3777 (AKH), 2015 WL 1941331 (S.D.N.Y. Apr. 28, 2015) ................... 6, 11

*Internet Patents Corp. v. Active Network, Inc.*,
    Nos. 2014-1048, 2014-1061, 2014-1062, 2014-1063 (Fed. Cir. June 23, 2015) ........ 4, 13

*Jericho Systems Corp. v. Axiomatics, Inc.*,
    C.A. No. 3:14-cv-2281-K, 2015 WL 2165931 (N.D. Tex. May 7, 2015) ................. 8, 9

*Koehn v. Indian Hills Cmty. Coll.*,
    371 F.3d 394 (8th Cir. 2004) ................................................................................... 4

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    132 S. Ct. 1289 (2012) .......................................................................................... 4, 11

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Morales v. Square, Inc.,*
   No. 5:13-cv-1092-DAE, 2014 WL 7396568 (W.D. Tex. Dec. 30, 2014) ......................11

*MyMedicalRecords, Inc. v. Walgreen Co.,*
   2014 WL 7339201 (C.D. Cal. Dec. 23, 2014) ...................................................................6

*Prism Techs., LLC v. McAfee, Inc.,*
   No. 8:10-cv-220-LES-TDT, 2012 U.S. Dist. LEXIS 174451, (D. Neb. Dec. 10,
   2012) ..............................................................................................................................4

*Rubber-Tip Pencil Co. v. Howard,*
   87 U.S. 498 (1874) .........................................................................................................1

*Ultramercial, Inc. v. Hulu, LLC,*
   772 F.3d 709 (Fed. Cir. 2014) ..........................................................1, 5, 8, 10, 13, 14

**Statutes**

35 U.S.C. § 101 ....................................................................................................................2

**Rules**

Fed. R. Civ. P. 56(a) ............................................................................................................3

Local Rule CV-56.1 ............................................................................................................2

Defendant T-Mobile USA, Inc. ("T-Mobile") respectfully submits this Brief in Support of its Motion for Summary Judgment of Patent Ineligibility of U.S. Patent Nos. 8,127,345 and 8,387,155.

## I.   INTRODUCTION

It is a bedrock principle of our patent system that "'[a]n idea of itself is not patentable.'" *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972) (quoting *Rubber-Tip Pencil Co. v. Howard*, 87 U.S. 498, 507 (1874)).  Last year, the United States Supreme Court issued a landmark ruling aligning this fundamental principle with today's digital world. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014).  In *Alice*, the Supreme Court held that a simple instruction to implement an abstract idea through the use of generic computer technology is not patentable.  *Id.* at 2358.  Instead, patent claims directed to an abstract idea must include an "inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself."  *Id*. at 2355 (internal quotation marks omitted).

Since *Alice*, there has been a torrent of Federal Circuit and district court opinions holding claims purporting to implement abstract ideas via computers and/or the Internet to be patent-ineligible.  Indeed, the Federal Circuit has addressed the issue in thirteen cases since *Alice*, holding the claims ineligible in ***twelve*** of those cases.  Similarly, at least ***sixty*** district court opinions ***since*** *Alice*—not including those already affirmed by the Federal Circuit—have held claims ineligible for merely implementing abstract ideas in the context of computer technology.  This flood of cases is unsurprising, given that, prior to *Alice*, "the PTO ha[d] for many years applied an insufficiently rigorous subject matter eligibility standard."  *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 720 (Fed. Cir. 2014) (Mayer, J.,

concurring), *cert. denied sub nom. Ultramercial, LLC v. WildTangent, Inc.*, No. 14-1392, 2015 WL 2457913 (U.S. June 29, 2015).  Because this body of case law since *Alice* is too voluminous to recite here, T-Mobile has set forth in Appendix A a list of post-*Alice* cases holding software and/or computer claims ineligible under § 101.

In the wake of *Alice*, there can be no doubt that § 101 is a robust filter for distinguishing abstract ideas from patent-eligible inventions.  That filter applies here:  The asserted claims are directed to an abstract idea and are devoid of an inventive concept.  The abstract idea is restricting access to resources to only those who are authorized to utilize those resources.  The asserted claims recite systems and methods for authentication, authorization, and permission of access, but call for no particular manner in which to perform those functions.  Nor do the asserted claims disclose any particularized hardware or software required to employ the invention, but instead call only for generic computer hardware and software to implement each step.  This attempt to claim ownership of an abstract idea through the use of generic computer hardware, generic computer software, and generic computer functions is exactly what 35 U.S.C. § 101 and *Alice* forbid.

## II.   STATEMENT OF MATERIAL FACTS

Pursuant to Local Rule CV-56.1, T-Mobile provides the following statement of material facts as to which there is no genuine issue to be tried and identifies the supporting evidence for each such fact.

### A.   Jurisdiction and Venue

1.   Plaintiff Prism Technologies LLC ("Prism") is a limited liability company organized and existing under the laws of Nebraska, with its principal place of business at 2323 S. 171st Street, Suite 106, Omaha, Nebraska 68130.  Dkt. No. 1, ¶1.

2.      Defendant T-Mobile USA Inc. ("T-Mobile") is a Delaware corporation with its principal place of business at 12920 SE 38th Street, Bellevue, Washington 98006. T-Mobile conducts business in this district.  Dkt. No. 39, ¶2.

### B.      The Asserted Patents and Claims

3.      U.S. Patent No. 8,127,345 ("'345 patent"), entitled "Method And System For Managing Access To Protected Computer Resources Provided Via An Internet Protocol Network," issued on February 28, 2012 from an application filed October 30, 2007 with the United States Patent and Trademark Office ("USPTO").  Ex. 2.[1]

4.      U.S. Patent No. 8,387,155 ("'155 patent"), entitled "System For Managing Access To Protected Computer Resources," issued on February 26, 2013 from an application filed November 11, 2010 with the USPTO.  Ex. 3.

5.      Prism asserts T-Mobile infringes claims 1, 33, 39, 50, 57, 70, 77, 87 of the '345 patent and claims 7, 11, 32, 37, 50, 56, 74, 75, 76, 93 of the '155 patent (collectively, the "asserted claims").  Ex. 4, Prism Election of Asserted Claims Feb. 24, 2014, at 1.[2]

## III.    LEGAL STANDARDS

### A.      Summary Judgement

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 321–23 (1986).  "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate."  *Koehn*

---

[1]   All exhibits are attached to the Declaration of Michael T. Hilgers ("Hilgers Declaration") filed contemporaneously herewith.  The Hilgers Declaration is attached to the Index of Evidence in Support of Defendants' Brief in Support of their Motion for Summary Judgment ("Index") as Exhibit 1.

[2]   By e-mail dated March 24, 2014, Prism withdrew the previously asserted claims of the '288 patent.  Ex. 5, E-mail from Marcus Colucci to Defendants' counsel (Mar. 24, 2014).

*v. Indian Hills Cmty. Coll.*, 371 F.3d 394, 396 (8th Cir. 2004); *see generally Prism Techs., LLC v. McAfee, Inc.*, No. 8:10-cv-220-LES-TDT, 2012 U.S. Dist. LEXIS 174451, at *8 (D. Neb. Dec. 10, 2012).

B.      **The Patent Act:  35 U.S.C. § 101**

Section 101 of the Patent Act sets forth what subject matter is eligible for patent protection.  Just over one year ago, the Supreme Court, in its *Alice v. CLS Bank* opinion, reaffirmed and clarified the long-standing principle that abstract ideas are not patentable under 35 U.S.C. § 101.  Stating that abstract ideas are "the basic tools of scientific and technological work," the Court instructed that the goal in applying § 101 is to "distinguish between patents that claim the 'buildin[g] block[s]' of human ingenuity and those that integrate the building blocks into something more." *Alice*, 134 S. Ct. at 2354 (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1303 (2012)).  The Court thus set forth a two-step framework for determining whether a patent claims a patent-ineligible abstract idea, comprised of what is often referred to as "*Mayo* Step 1" and "*Mayo* Step 2."  At *Mayo* Step 1, a court must determine whether the claims at issue are directed to an abstract idea.  *Alice*, 134 S. Ct. at 2355 (citing *Mayo*, 132 S. Ct. at 1296-1297).  "[T]he claims are considered in their entirety to ascertain whether their character as a whole is directed to [an abstract idea]." *Internet Patents Corp. v. Active Network, Inc.*, Nos. 2014-1048, 2014-1061, 2014-1062, 2014-1063, slip op. at 6 (Fed. Cir. June 23, 2015).

If a court concludes the claims are directed to an abstract idea, it proceeds to *Mayo* Step 2, where it must evaluate whether the elements of the claims at issue transform the claims into a patent-eligible application of the abstract idea.  *Alice*, 134 S. Ct. at 2355.  This second step is "a search for an inventive concept—*i.e.*, an element or combination of

4

elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself." *Id.* (internal quotation marks omitted).

"The ultimate question of patent eligibility under § 101 is an issue of law," *In re BRCA1- & BRCA2-Based Hereditary Cancer Test Patent Litig.*, 774 F.3d 755, 759 (Fed. Cir. 2014), and is therefore suitable for disposition on summary judgment. *See Alice,* 134 S. Ct. at 2353-54 (affirming summary judgment of ineligibility under § 101).[3]   In evaluating a summary judgment motion brought under § 101, it is entirely proper for the Court to consider representative claims for the purpose of determining patent eligibility. *See , e.g.*, *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (affirming District Court's analysis of two representative claims as all of "the claims of the asserted patents are substantially similar in that they recite little more than the same abstract idea").

## IV.   ARGUMENT

### A.   The Asserted Claims Fail To Satisfy The Subject Matter Eligibility Standard Under Section 101 And *Alice*

#### 1.   *Mayo* Step 1:  The Asserted Claims Are Directed To An Abstract Idea

The asserted claims of the '345 and '155 patents are unambiguously directed to the abstract idea of providing access to resources only to those who are authorized to access such resources, or, in other words, the abstract idea of restricted access to resources.  The full text of representative claims for both the method and system claims are set forth in

---

[3]  Because of the PTO's long-standing misapplication of § 101, Judge Mayer's concurring opinion in *Ultramercial* notes that, unlike validity challenges under §§ 102, 103, and 112, no presumption of eligibility should apply to § 101 eligibility challenges.  *Ultramercial*, 772 F. 3d at 720 (Mayer, J., concurring). T-Mobile contends that the asserted claims are ineligible regardless of whether such a presumption applies.

Appendix B,[4] but cutting through the verbosity of the asserted claims reveals a patent purporting to claim the following basic process:  (i) receiving identity data from a device; (ii) authenticating that identity data; (iii) authorizing the identified device to receive protected resources; and (iv) permitting the device to access those protected resources over an Internet Protocol network upon successful authentication and authorization.

The practice of restricting access to protected resources is age-old and ubiquitous in modern society.  *See Intellectual Ventures II LLC v. JP Morgan Chase & Co.*, No. 13-cv-3777 (AKH), 2015 WL 1941331, at *12 (S.D.N.Y. Apr. 28, 2015) ("The concept of protecting access to otherwise unprotected digital information or property by the enforcement of rules is a conventional concept."); *MyMedicalRecords, Inc. v. Walgreen Co.*, 2014 WL 7339201, at *3 (C.D. Cal. Dec. 23, 2014) ("The concept of secure record access and management . . . is an age old idea.").  The practice long precedes computers. For example, security guards at bars and nightclubs across the country implement this idea nightly, restricting access to only those who can prove by way of an authentic means of identification they are at least twenty-one years old.  Similarly, ticket agents at will call windows restrict tickets to those who present proper identification confirming their entitlement to specific tickets, and gate agents and ushers at sporting events restrict access to arena entry and seating sections to those who present authentic tickets showing entitlement to designated seats.  Governments and private businesses routinely engage in similar restriction of access, limiting confidential information to only those who can establish that they are authorized to obtain such information.  And this Court, through its

---

[4]  Claim 1 of the '345 patent, a method claim, and claim 1 of the '155 patent, a system claim, are representative of all of the asserted method and system claims for purposes of a § 101 analysis.  Thus, T-Mobile uses these claims to illustrate its argument, but the argument applies equally to all of the asserted claims.

use of the CM/ECF system, implements the principle in this very case, restricting access to sealed documents only to those who are authorized to view such documents. The list of examples is endless. By way of illustration, T-Mobile sets forth below a chart demonstrating how this abstract idea can be and is practiced every day:

| Claim Limitation (Claim 1 of '345 Patent) | Sporting Event Example |
|---|---|
| A method for controlling access, by at least one authentication server, to protected computer resources provided via an Internet Protocol network, the method comprising: | A method for controlling access, by at least one individual, to protected resources provided in person, the method comprising: |
| receiving, at the at least one authentication server from at least one access server, identity data associated with at least one client computer device, the identity data forwarded to the at least one access server from the at least one client computer device with a request from the at least one client computer device for the protected computer resources; | an event gate agent receiving a ticket from a patron seeking access to the stadium; |
| authenticating, by the at least one authentication server the identity data received from the at least one access server, the identity data being stored in the least one authentication server; | the gate agent determining the ticket is authentic, by, for example, scanning a barcode or examining the design, material, and watermarks of the ticket; |
| authorizing, by the at least one authentication server, the at least one client computer device to receive at least a portion of the protected computer resources requested by the at least one client computer device, based on data associated with the requested protected computer resources stored in at least one database associated with the at least one authentication server; and | inside the stadium, an usher checking the ticket to determine whether the patron is authorized to enter the usher's seating section; |
| permitting access, by the at least one authentication server, to the at least the portion of the protected computer resources upon successfully authenticating the identity data and upon successfully authorizing the at least one client computer device. | the usher allowing the patron access to the section/seat indicated on the ticket. |

As the above chart makes clear, there are only two differences between the asserted claims and countless familiar examples of restricted access, neither of which is sufficient to confer patent eligibility. First, the inventors have attempted to cloak the abstract idea in

convoluted "patentese," but the Supreme Court "has long warned against interpreting § 101 in ways that make patent eligibility depend simply on the draftsman's art." *Alice*, 134 S. Ct. at 2360 (internal quotation marks and alterations omitted).  "Steps that do nothing more than spell out what it means to 'apply it on a computer' cannot confer patent eligibility." *Intellectual Ventures I LLC v. Capital One Bank (USA)*, No. 2014-1506, slip op. at 14 (Fed. Cir. July 6, 2015).  Indeed, in *Ultramercial*, the Federal Circuit rejected the patentee's argument that its claimed eleven-step process was "directed to a specific method of advertising and content distribution," instead agreeing with the defendant that "the claims do no more than break the abstract idea into basic steps and add token extra-solution activity[.]"  *Ultramercial*, 772 F.3d at 714.  Second, the claims introduce generic computer technology.  But "merely requiring generic computer implementation fails to transform that abstract idea into a patent-eligible invention."  *Alice*, 134 S. Ct. at 2352; *id.* at 2357; *see infra* at pp. 10-12.

In *Jericho Systems Corp. v. Axiomatics, Inc.*, C.A. No. 3:14-cv-2281-K, 2015 WL 2165931 (N.D. Tex. May 7, 2015), the abstract idea covered by the claims was essentially the same as that covered by Prism's asserted claims here.  As described by the court in *Jericho*, the asserted patent "disclose[d] an invention used to make a decision regarding a particular person's authority to access certain information.  The invention [did] this by determining what type of information is needed to make an access decision, obtaining that information, and the[n] applying that information to a rule regarding access to the information.  If the information satisfies the rule, then the person [was] allowed access.  If not then the person [was] denied access." *Id.* at *1.

8

The representative claim in *Jericho* recited a ten-step process for determining whether a user was authorized to access certain subject matter.  *Id.* at *4.  But, as the Court should do here, the court in *Jericho* cut through the seemingly complex language of the claims to reveal what was at the heart of the purported invention:

> The wording of the claim appears to present a complex method that uses attributes, rules, connectors, classifications, and remote data sources.  But, upon closer examination, the gist of the claim involves a user entering a request for access, looking up the rule for access, determining what information is needed to apply the rule, obtaining that information, and then applying the information to the rule to make a decision.  This is an abstract idea.  ***The abstract idea being that people who meet certain requirements are allowed to do certain things***.

*Id.* at *4 (emphasis added).  The court went on to describe examples "of how this abstract idea currently is and has been applied in society for as long as civilization has existed."  *Id.* at *5.  The court cited the need to be seventeen or older to buy tickets to an R-rated movie, the need for a driver's license to be permitted to drive, and the need for appropriate security clearance to access top secret information.  *Id.*  Ultimately, the court held the asserted claims were "directed to an abstract idea without any additional inventive concept, which is subject matter that is not eligible for patent protection."  *Id..* at *3.

Similarly, the claims asserted by Prism here are directed to the abstract idea that only "people who meet certain requirements are allowed to do certain things," or, in other words, restricted access.  The claims recite a method and system for obtaining identity data from a device requesting access to protected resources, confirming the identity data is authentic, determining whether the  device (or user associated with the device) is authorized to access the requested protected resources, and providing those resources if the device is so authorized.  This process is not meaningfully different from the process in *Jericho*, and is unquestionably directed to an abstract idea.

9

2.      *Mayo* **Step 2:  The Asserted Claims Do Not Contain An
Inventive Concept**

Because the asserted claims of the '345 and '155 patents are directed to the abstract idea of restricted access, the Court "must examine the elements of the claim[s] to determine whether [they] contain an inventive concept sufficient to transform the claimed abstract idea into a patent eligible application."  *Alice*, 134 S. Ct. at 2357 (internal quotation marks omitted).

Prism's asserted claims fail to reveal any inventive concept that might render them "significantly more" than a claim on restricted access.  The asserted claims seek only to take the concept of restricted access and apply it with generic computers.  But "[w]holly generic computer implementation is not generally the sort of additional feature that provides any practical assurances that the process is more than a drafting effort designed to monopolize the abstract idea itself."  *Id.* at 2358 (internal quotation marks and alterations omitted).  Claims not tied to novel hardware, but instead to general purpose computing equipment, are insufficient to satisfy *Mayo* Step 2 because such equipment lacks any hint of inventive characteristics.  *See Ultramercial*, 722 F. 3d at 716 ("The claims of the '545 patent, however, are not tied to any particular novel machine or apparatus, only a general purpose computer.").  That is exactly the case here, where the claims do not require anything beyond generic computer implementation.  For example:

- The "server computer" is "a computer that makes available information or other resources."  Mem. and Order [on Claim Construction], Dkt. No. 133 at 67.

- The "access server" is simply "server software that makes available information or other resources."  *Id.* at 66.

- The "authentication server" is "server software that is independent of the access server and is capable of storing data and controlling access to protected computer resources of the access server."  *Id.*

All of these pieces of hardware are defined with regard to their respective functions—storing, controlling, and allowing access to data—and all of these functions are generic, commonplace functions performed by any basic computer on the market. *See*, *e.g.*, *Alice*, 134 S. Ct. at 2360 ("But what petitioner characterizes as specific hardware—a 'data processing system' with a 'communications controller' and 'data storage unit,' for example—is purely functional and generic.  Nearly every computer will include a 'communications controller' and 'data storage unit' capable of performing the basic calculation, storage, and transmission functions required by the method claims.") (internal citation omitted); *Intellectual Ventures II*, 2015 WL 1941331, at *14 ("The use of an 'access mechanism' to enforce the pre-selected rules is nothing more than programming conventional software or hardware to apply rules governing access—a routine, conventional practice.").  These generic computer limitations are wholly insufficient to transform the abstract idea into patent-eligible subject matter. *See Morales v. Square, Inc.*, No. 5:13-cv-1092-DAE, 2014 WL 7396568, at *8 (W.D. Tex. Dec. 30, 2014) (holding that hardware such as a "response unit," a "local area repeater," and a "data center" did not "transform the abstract idea into a patentable claim" because "[t]he listed devices [were] included . . . for their generic purposes, and as such represent 'well-understood, conventional, routine activity.'") (citing *Mayo*, 132 S. Ct. at 1298).

Likewise, the software and other digital components recited by the claims are also generic components lacking any inventive qualities:

- "Identity data of a subscriber identity module associated with at least one client computer device" means "data sufficient for the system to determine whether a subscriber identity module associated with at least one client computer device is authentic and/or is entitled to access protected resources."  Mem. and Order [on Claim Construction], Dkt. No. 133 at 66-67.

- "Digital identification" means "digital data whose value is known in advance or calculated at the moment." *Id.* at 68.

- "Identity data associated with at least one client computer device" means "data sufficient for the system to determine whether a client computer device is authentic and/or is entitled to access protected resources." *Id.* at 68.

- "Identity data of at least one access server" means "data sufficient for the system to determine whether an access server is authentic and/or is entitled to access protected resources." *Id.* at 68.

- "Hardware key" and "access key" mean "an external hardware device or external object from which the predetermined digital identification can be read." *Id.* at 68.

All of these limitations are simply generic computerized implementations of the age-old idea of identification, capable of being performed by most computers in the marketplace. There is no particular type of identification, software, or programming required or recited by the claims.

Nor are the actions recited by the claims new, novel, or inventive.  The "authentication" and "authorization" limitations, two of the purportedly core aspects of the invention, *see* Dkt. No. 133 at 6 (citing *Prism Tech. LLC v. Adobe et al.*, 8:10-cv-220, Dkt. No. 178 at 6-7), require no particular manner of authentication or authorization, nor do they reveal any new or novel way of doing so.  To the contrary, authentication requires only "determining that something is . . . what it purports to be," and authorization requires only "determining whether to grant access to." Dkt. No. 133 at 66.

The breadth of the asserted claims, requiring no particular manner of authentication or authorization and seemingly sweeping in any methods developed before or after the patents issued, is a further indication of just how plainly the asserted claims fail to provide an inventive concept under *Mayo* Step 2.  *See Intellectual Ventures I LLC*, No. 2014-1506, slip op. at 11 ("it is often useful to determine the breadth of the claims in order to

12

determine whether the claims extend to cover a 'fundamental . . . practice long prevalent in our system'") (quoting *Alice*, 134 S. Ct. at 2356).  In another recent case with a similarly broad claim scope, the Federal Circuit struck down a patent held by Internet Patents Corporation, Prism's parent company.  There, the claims were directed to "maintaining" data in an online form when a computer user navigates away from that form, but without specifying any particular method by which that process would be performed.  The Federal Circuit stated:

> [C]laim 1 contains no restriction on how the result is accomplished.  The mechanism for maintaining the state is not described, although this is stated to be the essential innovation.  . . . IPC's proposed interpretation . . . describes the effect or result dissociated from any method by which [the function] is accomplished . . . .  Thus we affirm that claim 1 is not directed to patent-eligible subject matter.

*Internet Patents Corp. v. Active Network, Inc.*, No. 2014-1048, slip op. at 10 (Fed. Cir. June 23, 2015).

As with the claim in *Internet Patents Corp.*, the asserted claims here identify no restriction on how authentication or authorization is accomplished.  Similarly, there is no restriction on what type of identity data is used, and the only restriction on how data is transmitted, via an Internet Protocol network, is neither new nor inventive.  *See Ultramercial,* 772 F. 3d at 716.  That the claims here are specifically limited to use with an "Internet Protocol network" is of no moment:  "[T]he prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of the idea to a particular technological environment."  *Alice*, 134 S. Ct. at 2358 (citing *Bilski v. Kappos*, 561 U.S. 593, 610-11 (2010)); *see also Ultramercial,* 772 F. 3d at 716 ("As we have held, the use of the Internet is not sufficient to save otherwise abstract claims from ineligibility under § 101.").

### 3.    Even As An Ordered Combination, The Claims Reveal No Inventive Concept

As demonstrated above, when considered separately, the elements of the asserted claims describe systems and actions that are purely conventional.  But even "as an ordered combination" the claims do not contain an inventive concept.  *See Alice*, 134 S. Ct. at 2359.  The additional elements, viewed as a whole, "add nothing that is not already present when the steps are considered separately."  *Id.*  Instead, the claims recite a generic, computer-implemented process for authorizing access to resources provided over an Internet Protocol network, with no restriction on how such authorization (or authentication) is performed, and no novel requirement on the type of computer components used.  This recitation of "routine, conventional activity" is insufficient to transform the abstract idea into patent-eligible subject matter.  *See Ultramercial*, 772 F. 3d at 715 ("We conclude that the limitations of the '545 claims do not transform the abstract idea that they recite into patent-eligible subject matter because the claims simply instruct the practitioner to implement the abstract idea with routine, conventional activity.").

When all the pieces are put together, the asserted claims require only the implementation of activities typical to restricted access in any context, and are executed on generic hardware, running generic software, configured to perform generic functions.  Nothing in the claim language evidences the inventive concept needed to save the claims.  In that regard, the asserted claims here are plainly distinguishable from those asserted in *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F. 3d 1245 (Fed. Cir. 2014), the sole post-*Alice* case in which the Federal Circuit held the challenged claims were patent-eligible.  In *DDR*, the claims at issue were "directed to systems and methods of generating a composite web page that combines certain visual elements of a 'host' website with content of a third-

party merchant." 773 F. 3d at 1248. The goal of the claims was to prevent internet traffic of a host website from being redirected to a third-party website, which was achieved "by creating a new web page that permits a website visitor, in a sense, to be in two places at the same time." *Id.* The Federal Circuit held that the claims did not recite "some business practice known from the pre-Internet world along with the requirement to perform it on the Internet," but instead described a solution "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *Id.* Here, however, the problem addressed by the claims—determining whether someone should be allowed access to protected resources—does not arise specifically in "the realm of computer networks," nor is the proposed solution "necessarily rooted in computer technology."

    **B.**    **The Dependent Claims Similarly Fail To Satisfy The Subject Matter Eligibility Standard**

The limitations added by the various asserted dependent claims fail to add any inventive step to the otherwise abstract and generic implementation of restricted access. For example, the concept of utilizing multiple "authorization levels," (Ex. 2, '345 Patent, Claims 39, 87; Ex. 3, '155 Patent, Claims 32, 93), is well-known and commonly applied, such as in government classified information (*e.g.*, confidential, secret, top secret), different levels of seating at a baseball game (*e.g.*, box seats, field level, upper deck), and airplane seating (*e.g.*, economy class, business class, and first class). Similarly, using a hardware component to generate identity data, (Ex. 2, '345 Patent, Claim 57; Ex. 3, '155 Patent, Claim 7), is well-known and not inventive. To the contrary, the '345 and '155 patents identify a number of pre-existing hardware components already in use. For example, the '345 patent recites the following devices: a hardware token, such as the iKey

1000 USB Smart Token from Rainbow Technologies; a magnetic card reader, which is "widely utilized" in settings such as ATMs and Point-of-Sale terminals; a smart card reader; and a biometric or behavioral identification reader.  Ex. 2, '345 Patent at 5:47-53, 19:5-20, 20:4-21, 20:34-21:44.  Finally, the limitations dealing with "usage data" to be applied for "billing purposes," (Ex. 3, '155 Patent, Claims 37, 74, 75), are similarly not inventive.  There is nothing new or inventive about tracking a user's usage of a given resource in order to bill the user.  The remaining limitations, such as those dealing with the type of network utilized (*e.g.*, the Internet) or authentication of the access server, are not even arguably inventive.

## V.      CONCLUSION

For the reasons discussed and under the case law cited above and in Appendix A, T-Mobile respectfully requests the Court grant summary judgment in its favor on the ground that the asserted claims are not patent-eligible under 35 U.S.C. § 101.

Dated:  July 17, 2015

By:  ___ s/ Michael T. Hilgers

Michael T. Hilgers (#24483)
Carrie S. Dolton (#24221)
**GOBER HILGERS PLLC**
14301 FNB Parkway, Suite 100
Omaha, NE 68154
Telephone: 402.218.2106
Facsimile: 877.437.5755
mhilgers@goberhilgers.com
cdolton@goberhilgers.com

Daniel J. Thomasch (admitted *pro hac vice*)
Josh Krevitt (admitted *pro hac vice*)
**Gibson, Dunn & Crutcher LLP**
200 Park Avenue
New York, NY 10166-0193
Tel +1 212.351.3800
Fax +1 212.351.6200
DThomasch@gibsondunn.com
JKrevitt@gibsondunn.com

Jordan Bekier (admitted *pro hac vice*)
**Gibson, Dunn & Crutcher LLP**
333 S. Grand Ave.
Los Angeles, CA 90071-3197
Tel +1 213.229.7000
Fax +1 213.229.7520
JBekier@gibsondunn.com

Michael J. Abernathy (admitted *pro hac vice*)
Christopher Hanba (admitted *pro hac vice*)
**K&L GATES LLP**
70 West Madison Street
Chicago, IL 60602-4207
Telephone: 312.372.1121
Facsimile: 312.827.8000
mike.abernathy@klgates.com
christopher.hanba@klgates.com

**ATTORNEYS FOR DEFENDANT
T-MOBILE USA, INC**.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on July 17, 2015 true and correct copies of

the foregoing were served via the Court's CM/ECF system as follows:

**Kramer Levin Naftalis & Frankel LLP**
Jonathan S. Caplan, Esq.
Mark A. Baghdassarian, Esq.
Marcus A. Colucci, Esq.
1177 Avenue of the Americas
New York, NY 10001
Tel: 212.715.9100
Fax: 212.715.8000
jcaplan@kramerlevin.com
mbaghdassarian@kramerlevin.com
mcolucci@kramerlevin.com

Paul Andre, Esq.
Lisa Kobialka, Esq.
990 Marsh Road
Menlo Park, CA 94025
Tel: 650.752.1700
Fax: 650.752.1810
pandre@kramerlevin.com
lkobialka@kramerlevin.com

*Attorneys for Plaintiff*
*Prism Technologies LLC*

**Koley Jessen P.C., L.L.O.**
Michael C. Cox, Esq. (17588)
Daniel J. Fischer, Esq. (22272)
1125 S. 103rd Street, Suite 800
Omaha, NE 68124
Tel: 402.390.9500
Fax: 402.390.9005
Mike.cox@koleyjessen.com
Dan.fischer@koleyjessen.com

**Prism Technologies LLC**
André J. Bahou, Esq.
Vice President & Chief IP Officer
878 Arlington Heights Drive, Suite 400
Brentwood, TN 37027
Tel: 615.712.6580
Fax: 402.578.1447
Aj.bahou@prsmip.com

s/ Michael Hilgers
_____